IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ROBIN MANN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Defendant. )<br>) | Civil Action No. 3:22cv181 |

### COMPLAINT

Plaintiff Robin Mann ("Ms. Mann"), by counsel, states as follows for her Complaint against Defendant United States of America ("Defendant"), and alleges as follows:

### Jurisdiction and Venue

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

2. Prior to filing this action against Defendant, Ms. Mann filed an administrative tort claim with the Department of Veterans Affairs as required by 28 U.S.C. §2675(a), which is attached as **Exhibit A**.

3. The Department of Veterans Affairs acknowledged receipt of the administrative tort claim on March 9, 2021.

4. Pursuant to 28 U.S.C. §§ 1346(b), 2401(b), and 2671–80, the Department of Veterans Affairs has six months from the date a claim is received to consider the claim before a plaintiff can file suit in district court.

5. The relevant six-month period expired on September 9, 2021.

6. Accordingly, Ms. Mann's claims against Defendant are ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

7. Further, this action is properly brought within the two-year period set forth in 28 U.S.C. 2401(b).

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) as the cause of action as to Defendant arose within the Eastern District of Virginia at the Hunter Holmes McGuire Veterans Affairs Medical Center ("McGuire VAMC") at 1201 Broad Rock Boulevard, Richmond, VA 23249.

9. The plaintiff has obtained a signed written opinion from an expert witness whom the plaintiff reasonably believes would qualify as an expert witness pursuant to § 8.01-581.20(A). Based upon a review of the medical records and a reasonable understanding of the facts, that expert is of the opinion that Defendant's medical providers deviated from the applicable standard of care and those deviations were a proximate cause of the injuries claimed.

10. At all times relevant to this action, Defendant owned, occupied, and operated the McGuire VAMC through the Department of Veterans Affairs and related agencies and departments.

11. At all times relevant to this action, the agents, servants, employees, and personnel of Defendant were acting within the course and scope of their employment.

12. At all times relevant to this action, Ms. Mann received care and treatment at the McGuire VAMC.

## **Allegations**

13. Ms. Mann re-states and re-alleges paragraphs 1 through 12 as if fully stated herein.

14.     The Defendant and persons for whose conduct it is legally responsible owed Ms. Mann the duty to exercise reasonable care and to comply with the standard of care as set forth in the Code of Virginia § 8.01-581.20.

15.     During the course of providing healthcare to Ms. Mann in at least as early as December 2019, the Defendant and persons for whose conduct it is legally responsible negligently breached the standard of care duties owed to Ms. Mann and directly and proximately caused harm, injuries, and damages to Ms. Mann, as well as her related medical expenses.

16.     On November 7, 2016, Ms. Mann received a screening mammogram at the McGuire VAMC and the images were interpreted by Dr. Elizabeth H. Ellison ("Dr. Ellison"). In her notes, Dr. Ellison indicated the presence of a previously seen mass in Ms. Mann's left breast and indicated no new masses or malignancies. Dr. Ellison did not order an ultrasound of either breast.

17.     On November 13, 2018, Ms. Mann received another screening mammogram at the McGuire VAMC and the images were interpreted by Dr. Kenneth Uy ("Dr. Uy"). Similar to Dr. Ellison, Dr. Uy noted Plaintiff's breast tissue was heterogeneously dense, indicated there were no new malignancies or masses, and elected to not perform an ultrasound of either breast.

18.     On October 20, 2019, Ms. Mann reported for a hematology and oncology consult. Ms. Mann mentioned noticing a mass in her left thigh in April after losing weight. She also reported a small lump in her right buttock.

19.     In December 2019, Ms. Mann noticed a palpable lump in her left breast. As a result, she made an appointment with Dr. Joseph H. Ellen ("Dr. Ellen") at the McGuire Women's Health Center on December 6, 2019. Dr. Ellen noted the presence of a mass but indicated in his assessment

that the mass was a "benign fibrocystic condition." Nonetheless, Dr. Ellen ordered a screening mammogram.

20. On December 19, 2019, Ms. Mann received a screening mammogram performed by Dr. Ellison. Dr. Ellison's description of findings was identical word-for-word to the report she authored on November 7, 2016.

21. In her December 2019 report, Dr. Ellison did not identify the lump in Ms. Mann's left breast felt by Ms. Mann and Dr. Ellen and recommended no follow-up beyond a routine screening mammogram the following year.

22. On December 20, 2019, Ms. Mann received her screening mammogram results, which indicated her screening was benign and that no evidence of cancer had been found.

23. Around May or early June 2020, Ms. Mann noticed the lump in her left breast had become larger and more tender.

24. On June 15, 2020, she contacted the McGuire VAMC Primary Care Clinic via secure messaging and was advised to call Dr. Ellen in the Women's Health Center. Dr. Ellen advised Ms. Mann via a nurse to take Motrin and avoid caffeine. Ms. Mann followed up with the McGuire VAMC Primary Care Clinic after hearing these instructions. In response to Ms. Mann's insistence on more thorough care, Dr. John D. McGurl ("Dr. McGurl") ordered another screening mammogram.

25. On June 19, 2020, Dr. Uy performed a diagnostic mammogram and ultrasound on Ms. Mann. Dr. Uy erroneously noted that Ms. Mann's last mammogram was performed three years and eight months ago, when it had actually been performed in December 2019. Dr. Uy also did not indicate he compared Ms. Mann's mammogram screening to any prior images.

26. In his interpretation of Ms. Mann's mammogram, Dr. Uy noted the presence of a mass corresponding to Ms. Mann's area of concern in her left breast. He also performed an ultrasound which revealed an abnormal mass, and recommended biopsy of the mass.

27. This was the first instance any healthcare provider at the McGuire VAMC performed an ultrasound, despite reports of a mass in Ms. Mann's left breast recorded as far back as November 2016.

28. On June 25, 2020, Ms. Mann underwent ultrasound-guided biopsy of the mass in her left breast. Pathology reports indicated the mass represented a high-grade invasive mammary carcinoma.

29. Ms. Mann was subsequently referred to oncology care at the McGuire VAMC, and additional work-up of her breast cancer diagnosis was undertaken, including a breast MRI and PET scan.

30. Chemotherapy was recommended prior to surgical intervention based on the large size of her tumor. Ms. Mann began chemotherapy treatment on July 23, 2020.

31. Unfortunately, Ms. Mann's tumor did not respond to chemotherapy, and her surgery was expedited.

32. On November 6, 2020, Ms. Mann underwent several surgeries to treat her breast cancer. Intraoperative findings indicated a palpable mass about the size of a lemon was found in her left breast.

33. Post-operatively, Ms. Mann had to begin another course of chemotherapy, which she began on December 29, 2020. She has developed neuropathy as a result of the chemotherapy, which causes painful numbness and tingling in her fingertips and toes.

34. In addition, Ms. Mann began radiation treatments on January 21, 2021.

35. Since January 2021, Ms. Mann's cancer has progressed further. She restarted chemotherapy and is expected to be on some form of therapy for the rest of her life.

36. In March 2022, it was discovered that the cancer had metastasized to Ms. Mann's brain.

37. Ms. Mann's healthcare providers at the McGuire VAMC's failure to diagnose her left breast cancer in December 2019 and begin immediate treatment was a breach of the standard of care and that delay in diagnosis until more than six months later in late June 2020 has caused Ms. Mann to have a reduced life expectancy and has increased the chance she will die from breast cancer.

38. It was a breach of the standard of care for Ms. Mann's healthcare providers to order a screening mammogram instead of a diagnostic mammogram following the patient's reporting of a palpable lump in her left breast in December 2019. The standard of care required that a diagnostic mammogram be performed.

39. Because of Ms. Mann's dense breast tissue, the standard of care also required the performance of an ultrasound in addition to the diagnostic mammogram in response to the palpable mass in the left breast. The failure to order an ultrasound therefore was also a breach of the standard of care.

40. It also was a breach of the standard of care for the McGuire VAMC providers who interpreted the December 2019 screening mammogram to fail to note the need for a diagnostic mammogram and an ultrasound in light of the palpable left breast mass.

41. It also was a breach of the standard of care for the interpreting radiologist to fail to include in her report any information about the palpable mass for which the mammogram was ordered in the first place or to have identified the mass seen on her mediolateral oblique ("MLO")

view mammogram. Instead, the radiologist's report was essentially identical to her report from Ms. Mann's screening mammogram performed three years earlier, well before the palpable mass was noted.

42. This was a very fast-growing tumor, which increased in size from 2 x 2 cm on palpation in early December 2019 to 3.6 x 3.5 x 4.9 cm on ultrasound in late June 2020 to the "size of a lemon" by the November 2020 surgery.

43. In December 2019 through early 2020, the cancer was still small and readily treatable with the expectation for a high cure rate with appropriate treatment.

44. The more than six-month delay in diagnosis led to the development of an advanced and sizeable tumor.

45. As a result of this delay, Ms. Mann is more likely to die of breast cancer than had she been diagnosed in December 2019 and begun treatment immediately.

46. Of note, Ms. Mann was initially diagnosed with an ER + (40%), PR -, HER2 + (3+) tumor, which did not respond to the chemotherapy given by Defendant. On repeat testing, her tumor was not HER2 +, but HER2 -.

47. Unfortunately, the cancer has also progressed and has metastasized to her lung, with EBUS biopsy showing Triple Negative Breast Cancer, as well as to her brain.

48. If healthcare providers at the McGuire VAMC had diagnosed Ms. Mann in December 2019 or January 2020, Ms. Mann's tumor would have been classified as Stage IA. Such a tumor is correlated with a 93-95% overall chance of survival 10 years after diagnosis.

49. However, by the time Ms. Mann was diagnosed in late June 2020, her disease had progressed to such an extent her tumor was Stage IV, which correlates with a 20% overall chance of survival 5 years after diagnosis.

**Negligence**

50. Ms. Mann re-states and re-alleges paragraphs 1 through 49 as if fully stated herein.

51. As a provider of medical services to Ms. Mann, the Defendant and its agents, servants, or employees at the McGuire VAMC and its affiliates, including but not limited to Dr. Ellison, Dr. Uy, Dr. Ellen, Dr. McGurl, and any other nurses and doctors involved in Ms. Mann's care and treatment up to the date of diagnosis of her left breast cancer owed Ms. Mann a duty to provide her medical care and treatment consistent with the governing standard of medical care.

52. The agents, servants, or employees at the McGuire VAMC and its affiliates, including but not limited to Dr. Ellison, Dr. Uy, Dr. Ellen, Dr. McGurl, and any other nurses and doctors involved in Ms. Mann's care and treatment up to the date of diagnosis of her left breast cancer, while acting within the scope of their employment violated the applicable standards of medical care in the following respects:

    a. Negligent failure to order a diagnostic mammogram following Ms. Mann's report of a palpable lump in her left breast in December 2019.

    b. Negligent failure to perform an ultrasound following Ms. Mann's reporting of a palpable lump in her left breast in December 2019.

    c. Negligent failure by an interpreting radiologist to note the need for a diagnostic mammogram following Ms. Mann's report of a palpable lump in her left breast in December 2019.

    d. Negligent failure by an interpreting radiologist to note the need for an ultrasound following Ms. Mann's report of a palpable lump in her left breast in December 2019.

    e. Negligent failure by an interpreting radiologist to report, identify, or otherwise note Ms. Mann's palpable lump in her left breast in December 2019.

  f. Negligent failure to diagnose Ms. Mann's left breast cancer in December 2019 or January 2020.

  g. Negligent failure to begin immediate treatment for Ms. Mann's left breast cancer in December 2019 or January 2020.

  h. Negligent failure to order, perform, evaluate, and/or interpret appropriate imaging prior to the advancement of early-stage breast cancer.

  i. Negligent failure to communicate the seriousness of Ms. Mann's condition to the appropriate healthcare providers and/or directly to the patient.

  j. Negligent failure to provide Ms. Mann with the time to make appropriate and life-enhancing medical decisions.

  k. Negligent failure to educate Ms. Mann about her medical condition and health so that she could take appropriate and timely action to follow-up and to undergo surgery, radiation, and/or chemotherapy before the breast cancer advanced in stage.

  l. Negligent failure to communicate evidence of breast cancer, or any abnormality suspicious for breast cancer, or of the need for further imaging, directly to Ms. Mann or to other healthcare providers so that Ms. Mann could be timely referred to an oncologist, surgeon, or other healthcare provider for further testing to make the proper diagnosis at an earlier stage and to initiate the appropriate care and treatment.

  m. Negligent failure to diagnose Ms. Mann with breast cancer before she developed symptoms and before the cancer advanced in stage.

  n. Negligent failure to give Ms. Mann an opportunity to be diagnosed with early-stage breast cancer so that she could undergo treatment at an earlier stage.

  o. Negligent failure to provide their patient with her best chance for survivability.

  p. Negligent failure to prevent injury to their patient.

  q. Negligent failure to generally avoid risk of injury to Ms. Mann by failing to comply with the applicable standard of care.

  r. Negligent failure to perform diagnostic mammograms, ultrasounds, and other appropriate imaging that was indicated.

  s. Other negligent acts or omissions as will be developed through additional factual investigation, expert review, and discovery.

53. As a direct and proximate result of the forementioned negligence of Defendant, Ms. Mann claims compensation for the following injuries and damages:

  a. Bodily injuries and their effects, according to degree and probable duration;

  b. Physical pain and suffering and mental anguish suffered in the past and any that may be reasonably expected to be suffered in the future;

  c. Disfigurement or deformity and associated humiliation and embarrassment;

  d. Past inconvenience and any that may be reasonably expected to be caused in the future;

  e. Life care costs;

  f. Adverse psychological impact;

  g. Loss of enjoyment of life;

  h. Disruption of her activities of daily living;

  i. Reduced/diminished life expectancy;

  j. Loss of earnings in the past by reason of being unable to work at her calling;

    k.  Loss of earnings and lessening of earning capacity she may reasonably be expected to sustain in the future;

    l.  Economic losses, including past medical expenses and any that may be reasonably expected to be incurred in the future; and

    m.  Any other general and special damages that may be developed through investigation, expert review, and discovery.

  54.  As a direct and proximate result of the Defendant's negligence, Ms. Mann lost the ability to treat her breast cancer at an earlier, less severe stage, must undergo more extensive and invasive treatments, and now suffers a significantly decreased chance of survival and an earlier death than had the cancer been timely and appropriately identified and treated.

  WHEREFORE, Plaintiff requests that the Court grant judgment in her favor against the Defendant in the amount of FOUR MILLION DOLLARS ($4,000,000.00), together with pre-judgment and post-judgment interest and any other costs and further relief as she may be lawfully entitled to recover.

  Plaintiff reserves her right to amend this pleading as necessitated by discovery.

              Respectfully submitted,

              ROBIN MANN

      By:  _____
              Brewster S. Rawls (VSB #23604)
              Glen H. Sturtevant (VSB #73458)
              Rawls Law Group, P.C.
              211 Rocketts Way, Suite 100
              Richmond, Virginia 23231
              (804) 344-0038
              (804) 782-0133 – facsimile
              brawls@rawlslawgroup.com
              gsturtevant@rawlslawgroup.com